IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-227-RJC-DCK

| US FOODS, INC., | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | MEMORANDUM AND |
|  | ) | RECOMMENDATION |
| WHITE OAK MANOR - CHARLOTTE, INC., | ) |  |
| and WHITE OAK MANAGEMENT, INC., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion To Dismiss Defendants' Counterclaims" (Document No. 15). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be denied.

### I. BACKGROUND

U.S. Foods, Inc. ("Plaintiff" or "USF") initiated this action with the filing of a "Complaint" (Document No. 1) on May 10, 2019. The "Complaint" asserts a claim against Defendants White Oak Manor and White Oak Management, Inc. ("Defendants" or "White Oak") for contractual indemnity. (Document No. 1, pp. 4-5). Defendants filed their "Answer And Counter-Claims" (Document No. 10) on June 20, 2019. In their Answer, Defendants assert counterclaims of: (1) negligence; (2) breach of contract; (3) breach of express and implied warranties; and (4) equitable indemnification. (Document No. 10).

"Plaintiff's Motion To Dismiss Defendants' Counterclaims" (Document No. 15) was filed on August 12, 2019, pursuant to Fed.R.Civ.P. 12(b)(6). "Defendants' Response To Plaintiff's

Motion To Dismiss And Memorandum Of Law In Support Of Response" (Document No. 16) was filed on August 21, 2019. "Plaintiff's Reply In Support Of Its Motion To Dismiss Defendants' Counterclaims" (Document No. 17) was then filed on August 28, 2019.

This matter is now ripe for review and a recommendation to the Honorable Robert J. Conrad, Jr.

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

2

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

**A. Factual Background**

According to the Complaint, the walk-in cooler at Defendant White Oak's residential facility became inoperable due to a power failure on or about May 28, 2014. (Document No. 1, p. 2). White Oak manager Tracy Perreault ("Perreault") then faxed a "Trailer Request Form" (Document No. 1-2, pp. 6-7) to Plaintiff USF. Id. USF agreed to deliver a refrigerated trailer unit to White Oak, and Mr. Perreault, on behalf of White Oak, executed a "Use Of Equipment Agreement" (Document No. 1-2, pp. 8-9) (the "Agreement"). (Document No. 1, p. 3). The "refrigerated trailer unit" was delivered to White Oak on May 28, 2014, and "White Oak assumed exclusive possession and control over the refrigerated trailer unit." Id.

The next day, on or about May 29, 2014, USF "was advised that an employee of White Oak, Reginald Bostic, Sr. ("Bostic"), sustained bodily injuries arising out of his use of the refrigerated trailer unit." Id. On August 25, 2014 and October 21, 2014, USF "tendered to White Oak a claim under the indemnification provision of the Agreement to defend or indemnify US Foods." Id. White Oak did not respond to USF's tender. Id.

On May 10, 2016, Bostic filed a lawsuit against USF in the Superior Court of Mecklenburg County, North Carolina, "for injuries and damages arising out of his use of the refrigerated trailer

3

unit during the course of his employment." (Document No. 1, p. 4).  The lawsuit was removed to this Court on October 14, 2016.  Id.  (citing Bostic v. US Foods, Inc., 3:16-CV-714-MOC-DSC (W.D.N.C.)).  That lawsuit was settled for an amount exceeding $75,000 on or about March 8, 2018;  however, White Oak declined to attend or participate in the mediation or settlement.  Id.  White Oak's position was that "there are no duties of indemnification or defense owed by White Oak to US Foods."  Id.

Plaintiff USF contends that it "incurred significant loss and damages, including but not limited to the cost to settle the Lawsuit…."  Id.  USF further contends that Bostic's claim for damage falls "within the scope of White Oak's contractual indemnification obligations."

In support of the counterclaims, Defendants contend that Bostic's injuries on May 29, 2014, were "a result of improper and defective ramp equipment supplied, installed and delivered to Defendant White Oak Manor – Charlotte, Inc., by US Food, Inc." (Document No. 10, p. 10). Defendants assert that the ramp failed while Mr. Bostic was on it, and that the underlying alleged Agreement "is wholly inapplicable to the ramp that Plaintiff delivered and installed."  Id. Defendants contend that the defective ramp was not part of the refrigerated trailer unit.  (Document No. 10, p. 11).

As a result of the incident, Defendants state that they incurred "significant loss and damages, including but not limited to the cost to settle the workers' compensation claim" and related attorneys' fees and costs.  (Document No. 10, p. 10).

**B. Motion To Dismiss**

By the pending motion, Plaintiff USF seeks the dismissal of all of Defendants' counterclaims pursuant to Fed.R.Civ.P. 12(b)(6).  (Document Nos. 15 and 15-1).  Plaintiff argues that the express language of the Agreement precludes Defendants' claims and that USF "has no

4

liability for any damages arising out of White Oak's use or possession of the Equipment." (Document No. 15-1, p. 4) (citing Document No. 15-2). Plaintiff avers that Sections 4 and 6 of the Agreement provide that "'in no event shall USF be liable for any damage incurred' as a result of the Equipment failing to function properly" and that "USF shall have no liability for, and White Oak must indemnify and hold USF harmless for, [] any and all damages and claims 'arising out of or in connection with,' *inter alia*, White Oak's 'possession or use' of the Equipment." Id.

Plaintiff contends that the "language of Sections 4 and 6 of the Agreement is broad and unequivocal." (Document No. 15-1, p. 5). Plaintiff contends that these sections of the Agreement " preclude[] White Oak from asserting claims, including negligence claims, against USF that arise out of White Oak's use or possession of the Equipment," and therefore, the counterclaims are barred and should be dismissed Id.

In response, Defendants first argue that "the Agreement is not applicable to this particular transaction" or the facts in this litigation. (Document No. 16, p. 4). Defendant notes that "the Agreement fails to delineate what 'equipment,' if any, it applies to." Id. Specifically, paragraph 2 reads:

> The Equipment covered by this Agreement is as follows: (**INPUT DESCRIPTION OF EQUIPMENT TO BE RENTED AND GENERAL DESCRIPTION OF USE**). Requests for equipment for any other reason or purpose are not covered by this particular "Use of Equipment Agreement" and it's [sic] content. Other requests must be made on a case by case basis and will be granted subject to availability and with terms and conditions of that separate agreement which may or may not match this agreement.

(Document No. 16, p. 4) (quoting Document No. 1-2, p. 8; Document No. 15-2, p. 1) (Emphasis in original).

Defendants argue, therefore, that it is unclear what Equipment the Agreement refers to and that it nowhere identifies the refrigerated trailer unit or the "aftermarket defectively-installed ramp." Id.

Defendants further note additional ambiguities in the introductory paragraph of the alleged Agreement, which reads as follows:

> This USE OF EQUIPMENT AGREEMENT (this "AGREEMENT") is made this **DAY** of **MONTH**, **YEAR**, by and between US Foods, Inc. – (**FORT MILL**) **Division** ("USF") and **(INPUT CUSTOMER NAME)** ("Customer"), on the following terms and conditions:…

(Document No. 16, p. 5) (quoting Document No. 1-2, p. 8; Document No. 15-2, p. 1) (Emphasis in original). Defendants contend that the document is dated June 12, 2012, at the bottom of the first page, but that there are no other dates in the body of the document, including the introductory paragraph. Id.

Defendants argue that "under North Carolina law, where contractual provisions are ambiguous, those ambiguities 'are to be strictly construed against the drafting party.'" (Document No. 16, p. 5) (quoting Stewart v. U.S. Corrections Corp., No. 1:98-CV-173–C, 1999 WL 33321101, at *2 (W.D.N.C. Mar. 17, 1999) (citing Station Assocs., Inc. v. Dare Cty., 130 N.C.App. 56, 501 S.E.2d 705, 708 (1998), rev'd on other grounds, 350 N.C. 367, (1999)); see also Maersk Line, Ltd. v. United States, 513 F.3d 418, 423 (4th Cir. 2008) ("The basic contract law principle contra proferentem counsels that we construe any ambiguities in the contract against its draftsman.")).

Defendants further argue that even if the Agreement is interpreted to apply to the facts of this case, "it does not pertain to the added-on, aftermarket defective ramp which Plaintiff undertook of its own volition to prop up the refrigerated trailer unit for use by WOM Charlotte after delivery

6

to WOM Charlotte." (Document No. 16, p. 6). Defendants acknowledge that there is a history of similar transactions between the parties, where Defendants would request a refrigerated trailer – but never before had such a ramp been included. (Document No. 16, p. 7).

Defendants contend that the pending motion to dismiss relies entirely on the language of the Agreement, but the critical terms of the Agreement, including Equipment, the date of contracting, and the contracting party, are fatally ambiguous. (Document No. 16, p. 8). Finally, Defendants assert that the Agreement is void as a matter of public policy because it calls for Plaintiff to be indemnified even if its sole negligence is the subject of the liability. Id.

In reply, Plaintiff first argues that Defendants are wrong regarding applicable North Carolina law and indemnification. (Document No. 17, pp. 2-3) (citations omitted). In addition, Plaintiff argues that Defendants cannot credibly argue that the Agreement does not apply to this dispute. (Document No. 17, pp. 3-4). Plaintiff notes that the Agreement includes a fax transmission header indicating that Defendants signed and returned the Agreement on May 28, 2014, the same day of Defendants' power outage. (Document No. 17, p. 4). Plaintiffs contend that "White Oak requested and received the rental trailer unit, with the ramp, on the same day it signed and faxed the Agreement to USF." (Document No. 17, . 5). Plaintiff concludes there is not ambiguity as to what Equipment Defendants were renting pursuant to the Agreement. Id.

After careful consideration of the parties' briefs and the record of this case, the undersigned will recommend that the motion to dismiss be denied. In short, the undersigned agrees with Defendants that the Agreement includes critical ambiguities and that this matter should proceed to discovery. Moreover, the undersigned is persuaded that Defendants have adequately alleged sufficient facts to support plausible counterclaims that should survive at this stage of the litigation.

The undersigned observes that Plaintiff's Complaint neglects to mention the ramp involved in the underlying accident even though it appears to have been a critical aspect of the related action Bostic v. US Foods, Inc., 3:16-CV-714-MOC-DSC (W.D.N.C.). Plaintiff's position that the Agreement unambiguously included a refrigerated trailer and ramp as the "Equipment" is unavailing. It is indisputable that the parties failed to "input [a] description of the equipment to be rented," or the customer name and the date in the introductory paragraph of the Agreement. See Document No. 1-2). The full impact of those omissions is a determination for another day, but for now, the undersigned finds that this litigation should proceed without further delay.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Plaintiff's Motion To Dismiss Defendants' Counterclaims" (Document No. 15) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the parties file a Certificate of Initial Attorney's Conference pursuant to Local Rule 16.1, on or before **March 13, 2020**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue

in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: February 21, 2020

David C. Keesler
United States Magistrate Judge