UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00227-RJC-DCK

| US FOODS, INC., | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) |
| | ) ORDER |
| WHITE OAK MANOR – CHARLOTTE, INC., and WHITE OAK MANAGEMENT, INC., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 33), Plaintiff's accompanying memoranda and declarations in support, (Doc. Nos. 34–37), Defendants' Memorandum in Opposition, (Doc. No. 43), and Plaintiff's Reply, (Doc. No. 46). The motion has been fully briefed, and argued and is ripe for adjudication.

I.  BACKGROUND

    a. Factual History

Plaintiff US Foods, Inc. ("US Foods") is a national food distributor servicing numerous industries. (Doc. No. 34 at 1). Defendants White Oak Manor-Charlotte, Inc. and White Oak Management, Inc. (collectively "White Oak") manage several retirement communities including one in Charlotte, North Carolina at which the underlying incident in this case occurred. (Doc. No. 43 at 1). Prior to the incident

1

at issue in this lawsuit, the parties had established a business relationship under which US Food provided food supply services to its customer White Oak.

Then, on May 28, 2014, a power outage occurred at White Oak's Charlotte location. (Doc. No. 43-1 at 1–2). This outage necessitated Defendants' acquisition of a temporary refrigerated trailer to preserve Defendants' food supply for its residents. (Id.). White Oak's Food Service Manager, Tracy Perraeult, contacted US Foods to request the temporary use of a refrigerated trailer. (Id. at 2).

At approximately 2:00 p.m. that same day, US Foods delivered the refrigerated trailer to White Oak. (Id. at 2). The trailer came with an after-market removable ramp that US Food's driver set up. (Doc. No. 35-2 at 2–4, Doc. No. 43-1 at 2, Bostic Dep. 42:18-23). Perrault inspected the refrigerated trailer for cleanliness and then signed the Use of Equipment Agreement (the "Agreement") that governed the terms of the rental. (Doc. No. 43-1 at 2).

The Agreement did not specify a rental price for the trailer. However, it did state that US Foods "makes no representation as to the condition of the Equipment and in no event shall USF [US Foods] be liable for any damage incurred . . . as a result of the failure of the Equipment to operate properly or otherwise in accordance with Customer's expectations." (Doc. No. 1-2 at 2). The Agreement also included an indemnification clause, which read as follows:

> Customer hereby agrees at all times to indemnify, defend, and hold USF, its affiliates, directors, officers, shareholders and employees, harmless from and against any and all costs, damages, awards, causes of action, losses and fees, including but not limited to, reasonable attorneys' fees, arising out of or in connection with any violation of this Agreement by Customer or its agents or employees, any property

> damage, product liability, bodily injury or death incurred as a result of Customer's acts, omissions, possession or use of the Equipment. The indemnification obligation under this Section shall not be limited by a limitation on amount or type of damages, compensation, or benefits payable by or for Customer under worker's or workmen's compensation acts, disability benefit acts, or other employee benefit acts. In no event shall USF be liable for any injury or death incurred by any employee, agent or representative of Customer in connection with the acts, omissions, possession or use of the Equipment by Customer. The foregoing indemnification shall survive the expiration or early termination of this Agreement.

(Doc. No. 1-2).

The day after the delivery, Reginald Bostic ("Bostic") – a White Oak employee – was injured while using the equipment in question. (Doc. No. 43-2 at 84–86). Bostic alleged that, as he exited the trailer with food supplies, the ramp collapsed without warning, causing him to fall and sustain injuries. (Id.). On May 12, 2016, Bostic filed suit against US Foods in the Superior Court Division, Mecklenburg County, Case Number 16-CVS-8194, for the alleged injuries he suffered while using the trailer. (Doc. No. 43-3). The case was later removed to Western District of North Carolina Federal Court as Civil Action No. 3:16-cv-00714.

During the litigation, US Foods sent two letters to White Oak requesting indemnification and defense for Bostic's lawsuit pursuant to Section 6 of the Agreement between White Oak and US Foods. (Doc. No. 36-1 at 2–3, 9–10). White Oak did not indemnify US Foods or help US Foods defend against the Bostic lawsuit. Additionally, White Oak did not participate in the mediation proceedings of the Bostic case, stating that it had no duty to indemnify or defend US Foods under these circumstances. (Doc. No. 36-2 at 4). US Foods ultimately reached a

settlement with Bostic that included a payment of $490,000. (Doc. No. 36-3 at 2; Doc. No. 37-1 at 2). In its defense of the Bostic suit, US Foods incurred legal fees and costs of $379,816.08. (Ahrens Dec. at Exs. 4–8, Kupferschmid Dec. at Exs. 2–6).

Bostic also filed a workers' compensation claim against White Oak regarding the May 29, 2014 accident. (Doc. No. 43 at 4). The claim was settled on December 20, 2017, and White Oak paid $295,876.70 in total benefits to Bostic. (Doc. No. 43-4 at 6).

### b. Procedural History

Plaintiff US Foods filed a Complaint in this Court for Contractual Indemnity against White Oak on May 10, 2019, seeking damages in the amount US Foods paid to Bostic, reasonable attorneys' fees incurred by the Bostic lawsuit, reasonable attorneys' fees attributed to this action, and pre-judgment and post-judgment interest. (Doc. No. 1). Defendants filed a Reply on June 20, 2019, which also contained Counterclaims for negligence, breach of contract, breach of express and implied warranties, and equitable indemnification. (Doc. No. 10).

Following discovery, Plaintiff filed a motion for summary judgment on March 29, 2021. (Doc. No. 33). The motion seeks summary judgment on Plaintiff's claim as well as on all four of Defendants' counterclaims. Defendants filed a Response on May 24, 2021, after which Plaintiff filed a Reply on June 3, 2021. (Docs. Nos. 46, 48).

## II. MOTIONS FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment on its claim and on all counterclaims.

4

A.  Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quotation marks omitted).  This "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.  The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment; rather, it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence

5

and any inferences therefrom in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

### B. Plaintiff's Claim: Contractual Indemnity

Plaintiff claims that the terms of the Agreement are clear and require Defendants to indemnify Plaintiff for losses incurred pursuant to Defendant's use of the equipment. "[W]hen the terms of a contract are plain and unambiguous, there is no room for construction." State v. Philip Morris USA Inc., 363 N.C. 623, 685 S.E.2d 85, 91 (N.C. 2009) (quotation marks omitted). "A contract that is plain and unambiguous on its face will be interpreted by the court as a matter of law," Schenkel & Schultz, Inc. v. Hermon F. Fox & Assocs., P.C., 362 N.C. 269, 658 S.E.2d 918, 921 (N.C. 2008), and "the court cannot look beyond the terms of the contract to determine the intentions of the parties." Lynn v. Lynn, 202 N.C.App. 423, 689 S.E.2d 198, 205 (N.C. Ct. App. 2010). "When an agreement is ambiguous and the intention of the parties is unclear, however, interpretation of the contract is for the jury." Schenkel, 658 S.E.2d at 921, 362 N.C. 269. "A contract term is ambiguous only when, in the opinion of the court, the language of the contract is fairly and reasonably susceptible to either of the constructions for which the parties contend." Philip Morris USA Inc.,

6

363 N.C. at 641 (brackets and quotation marks omitted).

The North Carolina Supreme Court "has expressly recognized the right of a party to contractually provide for indemnification against its own negligence." CSX Transp., Inc. v. City of Fayetteville, 247 N.C. App. 517, 523, 785 S.E.2d 760, 763–64 (2016). However, "[c]ontracts exempting persons from liability for negligence are not favored by the law and are strictly construed against the party claiming such exemption." Jordan v. Eastern Transit & Storage Co., 266 N.C. 156, 161, 146 S.E.2d 43, 48 (1966); see also City of Wilmington v. N. Carolina Nat. Gas Corp., 117 N.C. App. 244, 245-248 (1994) (finding an indemnity clause that indemnified plaintiff for "any and all damage or injury of any kind or nature whatever… resulting from… the design, construction, installation, maintenance, or operation… by the [defendant]" did not explicitly insulate the plaintiff from its own negligence). A clause will not be construed as exculpatory "in the absence of explicit language clearly indicating that such was the intent of the parties." Hill v. Carolina Freight Carriers Corp., 235 N.C. 705, 710, 71 S.E.2d 133, 137 (1952).

Plaintiff argues that the indemnification clause in the Agreement requires Defendants to indemnify Plaintiff for the Bostic lawsuit because the clause covers any "bodily injury" caused by Defendants' "acts, omissions, possession or use of the Equipment." (Doc. No. 34 at 8). Plaintiff states that Bostic's injuries occurred during Defendant's possession and use of the trailer and therefore fall under the purview of the indemnification clause. (Id. at 9). Plaintiff argues that the clause is an exculpatory indemnification clause that protects Plaintiff even in the event of injury

7

based on Plaintiff's own negligence.

Defendants reply that the clause only requires Defendants to indemnify Plaintiff for negligence that is attributable to Defendants, because the language must be construed against the Plaintiff and is not sufficiently explicit to indemnify Plaintiff from its own negligence. (Doc. No. 43 at 7). Because the clause refers to 'Customer's acts," Defendants argue that the language is qualified and does not clearly cover injury based on Plaintiff's own negligence. Defendants also argue that the Agreement is a construction agreement under N.C. Gen. Stat. Ann. § 22B-1, and that under this law agreements that require a promisor to indemnify a promisee from the promisee's own negligence are unenforceable as being against public policy. (Id. at 7–10).

Defendants' argument that the Agreement violates public policy under N.C. Gen. Stat. Ann. § 22B-1 is unpersuasive. The statute does not apply to the facts in this case, and Defendants' reliance on Miller Brewing Co. v. Morgan Mech. Contractors, Inc., 90 N.C. App. 310, 368 S.E.2d 438 (1988) is unavailing. In that case, while the Court did indeed broadly interpret the statute's applicability, the underlying facts involved a bid-upon engineering project assembling and installing a forty-foot conveyor system. Id. at *312, *439. Such an act much more neatly fit the "construction" and "alteration" required to fall within § 22B-1 than does the delivery of a refrigerated trailer, even given the simple affixation of an accompanying ramp. It would stretch the plain meaning of language too much to apply the facts of this case, which is more tantamount to emergency temporary equipment rental, to a statute regulating construction agreements.

8

Turning to the language of the indemnification clause itself, the contract's language is clear and unambiguous. The clause in question requires Defendants to:

> indemnify, defend, and hold [Plaintiff] . . . harmless from and against any and all costs, damages, awards, causes of action, losses and fees . . . arising out of or in connection with . . . bodily injury or death incurred as a result of Customer's acts, omissions, possession or use of the Equipment. . . . In no event shall USF be liable for any injury or death incurred by any employee, agent or representative of Customer in connection with the acts, omissions, possession or use of the Equipment by Customer.

(Doc. No. 1-2). The language that Plaintiff will be indemnified for "any and all" damages incurred as a result of Defendants' "possession or use of the Equipment," and that in "no event" shall Plaintiff "be liable for any injury . . . incurred by any employee" of Defendants in connection with the "use of the Equipment" leaves no room for ambiguity. Bostic's injury undoubtedly occurred "in connection with" Defendants' use of the equipment, as he was using the equipment while on the job when he became injured by it, and the injury was also incurred "as a result of" Defendants' possession and use of the equipment, as the injury would not have occurred but for Defendants' possession and use of the refrigerated trailer. The Agreement's language on its face unambiguously covers the damages incurred here, leaving "no room for construction." Philip Morris, 363 N.C. at 685.

Plaintiff correctly argues that Courts will not read into indemnification agreements provisions "which are neither expressly nor reasonably inferable from the terms." City of Wilmington v. N. Carolina Nat. Gas Corp., 117 N.C. App. 244, 248, 450 S.E.2d 573, 575 (1994). The language contained in this Agreement is clear, sufficiently broad, and undoubtedly covers the facts raised by this case. See Malone

9

v. Barnette, 772 S.E.2d 256, 259–60 (2015); see also Cooper v. H. B. Owsley & Son, Inc., 43 N.C. App. 261, 263, 258 S.E.2d 842, 844 (1979) (finding an indemnification clause stating that lessor "shall not be liable… for any other loss arising from the use of, transportation of, or in any way connected with the said equipment" covered the lessor's own negligence).

The indemnification clause covers Plaintiff's own negligence under any reasonable interpretation of the language, and there is no ambiguity in the language of the Agreement to create a question of fact for the jury. Therefore the Court will grant summary judgment in favor of the Plaintiff on its Contractual Indemnity claim, and award Plaintiff the $490,000 incurred in the Bostic settlement plus interest. Plaintiff also seeks recovery of the attorneys' fees and costs spent in defense of the Bostic lawsuit pursuant to the indemnification clause; the Court will discuss these fees below.

C.  Attorneys' Fees

Plaintiff moves for the recovery of attorneys' fees in connection with the Bostic lawsuit.[1] Generally, North Carolina law requires statutory authorization for the recovery of attorneys' fees. Stillwell Enterprises, Inc. v. Interstate Equip. Co., 300 N.C. 286, 289 (1980) ("[A] successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by

---

[1] Despite arguing in its later briefing that it is also entitled to direct attorneys' fees related to the current action, (Doc. No. 46 at 11), US Foods agrees that it has not yet moved for such fees. (Doc. No. 34 at 10 n.6). Therefore this Court will not address that issue here.

statute."). N.C. Gen. Stat. § 6-21 states that, if there is "evidence of indebtedness," parties can recover up to 15% of attorneys' fees. North Carolina courts have not clearly determined whether ancillary attorneys' fees must be expressly authorized by statute. See GR&S Atl. Beach, LLC v. Hull, No. 11 CVS 5883, 2012 WL 4850195, at *15 (N.C. Super. Oct. 10, 2012), on reconsideration sub nom. GR & S Atl. Beach, LLC v. Hull, No. 11 CVS 5883, 2013 WL 3946127 (N.C. Super. July 26, 2013) (stating that whether ancillary fees are recoverable absent statutory authority "is not squarely resolved by precedent"). Federal courts interpreting North Carolina law have also come to conflicting interpretations on this question. See Sara Lee Corp. v. Quality Mfg., 201 F. Supp. 2d 608, 614 (M.D.N.C. 2002), aff'd sub nom. Sara Lee Corp. v. Quality Mfg., Inc., 61 F. App'x 836 (4th Cir. 2003) (holding that "the weight of the case law clearly supports [the] position that statutory authority is absolutely required to recover attorney's fees"); cf. Norfolk S. Ry. Co. v. TIMEC Co., Inc., No. 1:08CV99, 2009 WL 3787621, at *5 (M.D.N.C. Nov. 9, 2009) (holding that Stillwell does not apply to ancillary fees and that statutory authorization is not required).

1. **Ancillary Attorneys' Fees**

Plaintiff argues that it is entitled to the recover the $342,340.26 in attorneys' fees incurred during the Bostic litigation as ancillary fees that can be awarded without statutory authorization. (Doc. No. 46 at 13). Plaintiff cites Hull and other cases to argue that such ancillary fees should not be subject to the typical statutory authorization requirements. (Id. at 13–14). Defendant replies that North Carolina requires statutory authorization for any award of attorneys' fees, and that Plaintiff

11

has not pointed to any such statutory authorization here. (Doc. No. 43 at 10–11). Furthermore, Defendant argues that Plaintiff's attorneys' fees must be reasonable, but that the amount Plaintiff is requesting appears unreasonable and is supported only by redacted invoices, providing the Court no way to determine their reasonability. (Id. at 11).

North Carolina law typically requires statutory authorization for the recovery of attorneys' fees. Stillwell, 300 N.C. at 289. However, some courts have recognized a distinction between "direct" and "ancillary" fees and, after a lengthy analysis, have found that the ancillary attorneys' fees can be granted without statutory authorization when previously contracted for by the parties. GR & S Atl. Beach, LLC v. Hull, No. 11 CVS 5883, 2011 WL 4501912, at *6 (N.C. Super. Sept. 29, 2011) ("if the Court were to issue a dispositive ruling, its present inclination is, subject to proof, to allow recovery of Ancillary Fees without the need for statutory authority"); see also Crescent Univ. City Venture, LLC v. AP Atl., Inc., No. 15 CVS 14745, 2019 NCBC LEXIS 46, *104 (N.C. Super. Ct. Aug. 8, 2019) (describing the Hull court has holding that "the public policy concerns behind requiring statutory authorization for the recovery of direct fees were not necessarily applicable to indemnity agreements allowing for the recovery of ancillary fees.").

In Hull, Judge Gale squared the precedent in Queen City Coach, 229 N.C. 534, 50 S.E.2d 288 (1948), in which the Court denied the recovery of ancillary fees because the indemnity agreement did not expressly authorize their recovery (thereby implying that such fees would have been recoverable if the contract had allowed for

12

them despite no statutory authorization), with Stillwell, which stated that a statutory basis is required for any attorneys' fees recovery. The Court in Hull explained that ancillary fees are treated differently in the law than direct fees, the latter of which requires a statutory basis but the former of which do not. The Court finds Hull's reasoning persuasive.

Here, the Agreement's indemnification clause explicitly covers "reasonable attorneys' fees" among the forms of losses and fees for which Defendant is required to indemnify Plaintiff. Therefore, Plaintiff's reasonable attorneys' fees from the Bostic action are recoverable as ancillary fees requiring no statutory authorization. Hull, 2011 WL 4501912 at *6. The amount constituting "reasonable attorneys' fees" in that case, however, is yet to be determined and will be discussed below.

### 2. Calculating Attorneys' Fees

While the Court has determined that Plaintiff is eligible for ancillary attorneys' fees related to the Bostic lawsuit, the Court must determine the appropriate amount of such fees to award. "[T]o determine if an award of counsel fees is reasonable, the record must contain findings of fact as to the time and labor expended, the skill required, the customary fee for like work, and the experience or ability of the attorney' based on competent evidence." Brookwood Unit Ownership Assn. v. Delon, 124 N.C.App. 446, 449–50, 477 S.E.2d 225, 227 (1996) (internal citations omitted).

Here, Plaintiff has submitted hundreds of pages of invoices for its legal fees related to the Bostic lawsuit. However, these invoices almost all redact any description of the work involved. (Doc. Nos. 36-4–36-8). Under such circumstances

13

the Court cannot determine the reasonability of the attorneys' fees sought. Therefore, the Court will reserve ruling on the amount of such attorneys' fees to award, if any, until the Plaintiff has provided sufficient evidence in support. The Court hereby ORDERS Plaintiff to submit supplemental briefing and evidence under seal within ten (10) days of this Order to serve as a basis for determination of the Bostic suit's attorneys' fees' reasonability. The Defendant will have one week to respond to Plaintiff's submission.

### D. Defendants' Counterclaims

Plaintiff argues that the Court should enter summary judgment in Plaintiff's favor on Defendants' counterclaims. Although Plaintiff cites several arguments in favor of this conclusion, the Court need only address one - that the Agreement between the parties defeats each such counterclaim.

Plaintiff contends that the Agreement repeatedly states that US Foods shall have no liability for any damages arising out of Defendants' use or possession of the equipment, and that these counterclaims violate that provision. (Doc. No. 34 at 14). Plaintiff argues that Sections 4, 5, and 6 of the Agreement broadly and unequivocally disclaim warranties about the refrigerated trailer, place responsibility on the Defendant for the trailer's operation, and preclude Defendants from asserting related claims against Plaintiff. Although Defendants do not directly respond to this as a separate argument, Defendants' previous arguments against summary judgment on Plaintiff's case in chief can be imputed to this argument.

The plain terms of the Agreement preclude Defendants' counterclaims here.

First, as previously found by the Court, the Agreement's indemnity clause unambiguously protects Plaintiff from negligence claims involving "any and all" damages incurred as a result of Defendants' "possession or use of the Equipment," and that in "no event" shall Plaintiff "be liable for any injury . . . incurred by any employee" of Defendants in connection with the "use of the Equipment." (Doc. No. 1-2 at 3). Defendants' negligence counterclaim exclusively involves Plaintiff's delivery and installation of the equipment in question, and damages that occurred in connection with Bostic's use of the equipment; therefore, for the same reason, Defendant's negligence counterclaim fails under the Agreement.

Second, the plain language of the Agreement also bars Defendants' counterclaims for breach of contract, breach of express and implied warranty, and equitable indemnification. Defendant's breach of contract counterclaim states that Plaintiff agreed to provide a "safe, fully functional, operation refrigerated trailer" and that Plaintiff violated that agreement. (Doc. No. 10 at 12). However, the Agreement includes no such promise, instead stating specifically that Plaintiff "makes no representation as to the condition of the Equipment . . . ." (Doc. No. 1-2 at 2). This phrase also precludes Defendants' express or implied warranties counterclaim, as the phrase makes plain that there are no warranties promised. See N.C. Gen. Stat. Ann. §25-2A-214(3)(a) ("unless the circumstances indicate otherwise, all implied warranties are excluded by . . . other language that in common understanding calls the lessee's attention to the exclusion of warranties and makes plain that there is no implied warranty). Finally, the Agreement also

bars Defendant's equitable indemnification claim, because the Agreement already contains an indemnity clause. Greene v. Charlotte Chem. Lab'ys, Inc., 254 N.C. 680, 691, 120 S.E.2d 82, 89 (1961) ("There can be no implied contract where there is an express contract between the parties in reference to the same subject matter."). Defendants did not respond to Plaintiff's argument on this point, presumably because the clause's existence certainly bars a counterclaim based on an equitable version of the same.

The Agreement precludes all four of Defendants' counterclaims. Therefore there is no need to turn to Plaintiff's additional arguments against the counterclaims, including the economic loss doctrine, standing, and timeliness. The Agreement's prevention of all four counterclaims ends the inquiry.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that:

1. Plaintiff US Foods' Motion for Summary Judgment, (Doc. No. 33), is **GRANTED in part**:

    a. The Motion is **GRANTED** as to Defendants' Counterclaims;

    b. The Motion is **GRANTED** as to Plaintiff's Contractual Indemnity Claim;

        i. Plaintiff shall recover $490,000 plus interest, plus reasonable attorneys' fees from the Bostic action;

        ii. The Court will **RESERVE RULING** on the amount owed to Plaintiff in reasonable attorneys' fees from the Bostic

action; and

2. Plaintiff US Foods is **ORDERED** to provide supplemental briefing and evidence under seal within ten (10) days of this Order to provide a basis for determination of the reasonableness of the attorneys' fees sought. Defendant shall have one week to respond follow Plaintiff's filing.

**SO ORDERED.**

Signed: July 2, 2021

Robert J. Conrad, Jr.
United States District Judge